# MARION DEEMS

*vs.*

# STATE OF MARYLAND.

*Criminal Law : Murder; insanity as defense; province of Court and jury. Confession : Held to be voluntary.*

Under the Code of 1912, Article 59, section 4, when any person indicted for crime shall allege insanity in his defense, the jury empaneled to try such person shall find by their verdict whether such person was, at the time of the commission of the offense, or still is insane, lunatic or otherwise.          p. 627

Where such a defense is distinctly presented, and the case is not wholly devoid of evidence tending to sustain that theory, it is the constitutional right of the accused to have the jury determine whether or not he was, in law, criminally responsible for the crime for which he was being tried.          p. 628

The Court has no authority to decide as to the effect or sufficiency of evidence submitted to the jury on such an issue.

p. 628

No instruction can be given by the Court in a criminal case, except in a merely advisory form.          p. 628

On appeal from a trial for a capital offense, the rule as to the time for reserving exceptions should not be so strictly construed, as in the case of appeals in civil cases.          p. 630

Where the evidence shows that a confession was not influenced by any promise, threat or inducement of any kind, it is admissible in evidence.          p. 630

The fact that prior to the confession, an officer asked the accused "why he didn't tell the truth," saying that "the truth would hurt no one," and the fact that another officer spoke to the accused of his accountability hereafter, and said: "Why don't you tell it right, you are lying all through?" did not amount to such an improper influence as to render the confession inadmissible. p. 630

On an appeal from a conviction for a capital offense, a motion for the affirmance of the judgment on the ground that the brief for the appellant was not printed prior to the time when the case was reached for argument, as provided by Rule 36 of the Rules of the Court of Appeals, will not be granted, where the Court thinks the ends of justice would not be subserved by the rigid enforcement of the rule. p. 630

*Decided January 28th, 1916.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN and McLANE, JJ.)

The facts are stated in the opinion of the Court.

The case was argued before BOYD, C. J., BRISCOE, BÜRKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Chas. M. Held,* for the appellant.

*Edgar Allan Poe, the Attorney-General,* for the appellee.

URNER, J., delivered the opinion of the Court.

The appellant is under sentence of death upon a conviction of murder in the first degree. The assault which culminated in the homicide was horrible in its brutality. A deaf-mute woman was the innocent and helpless victim. While walking on a country highway in the early afternoon of a summer day she was attacked and dragged to a place of seclusion

and there denuded, raped, robbed and beaten to death with
a club.  There could be no doubt that the appellant was the
perpetrator of this fiendish deed.  In fact, he confessed the
homicide, although he denied the rape, claiming that robbery
was the only object of the assault.  The sole defense sought
to be established at his trial on the charge of murder was
that the prisoner was not mentally capable of distinguishing
between right and wrong, and of appreciating the nature and
consequences of his act, at the time it was committed.  No
evidence whatever was offered in his behalf except in support
of this theory as stated and urged by his counsel.  An
alienist who examined the prisoner, at his counsel's request,
ten days after the homicide, testified that he "had an unde-
veloped brain, low mental capacity, immatured judgment and
reasoning capacity;" and "the various tests showed him to be
a man with a brain not more than eleven or twelve years, in
other words an imbecile."  The witness expressed the opin-
ion that the prisoner understood the difference between right
and wrong, but "did not fully appreciate the quality of the
act or the consequence of the act."  There were two alienists
who examined the prisoner at the instance of the State, and
who testified that he was capable of appreciating the conse-
quences of his act, as well as of distinguishing between right
and wrong, and that he was not an imbecile; but they said
that his intellectual development, according to certain tests,
and as a result of improper environment and lack of educa-
tion, was only equal to that ordinarily shown by a child of
nine or ten years of age.

In the course of his argument to the jury, Mr. Keech, one
of the prisoner's counsel, stated that one of five verdicts
could be found, viz: "1st, Murder in the first degree; 2nd,
Not guilty of murder in the first degree, but guilty of murder
in the second degree; 3rd, Not guilty of murder, but guilty
of manslaughter; 4th, Not guilty; 5th, Not guilty by reason
of insanity at the time of the commission of the crime
charged."  Thereupon the Court interrupted the argument,

and said: "Mr. Keech, there can be only one of four verdicts rendered in this case, and I will instruct the jury as to the form thereof." After the State's Attorney had made the final argument, the Court directed the jury as follows: "Gentlemen of the jury, you can bring in any one of four verdicts in this case, namely: "Guilty of murder in the first degree; second, Not guilty of murder in the first degree, but guilty of murder in the second degree; third, Not guilty of murder, but guilty of manslaughter; fourth, Not guilty." An exception was reserved to this instruction as given under the circumstances just described.

The statute relating to the subject of insanity as a defense in criminal cases provides: "When any person indicted for a crime or misdemeanor shall allege insanity or lunacy in his defense, the jury impanelled to try such person shall find by their verdict whether such person was, at the time of the commission of the offense, or still is insane, lunatic or otherwise," Code, Art. 59, sec. 4. It is the humane purpose of this and succeeding provisions of the Code to protect an offender who is mentally incapable of forming a criminal intent from being punished as if he were sane, and to ensure for him the custody and treatment best suited to his unfortunate condition. *Devilbiss* v. *Bennett,* 70 Md. 557; *Spencer* v. *State,* 69 Md. 41. In the last cited case CHIEF JUDGE ALVEY stated that the existence of criminal responsibility on the part of a person accused of crime depended upon the question whether he was "competent to form and execute a criminal design; or, in other words, if at the time of the alleged offense, he had capacity and reason sufficient to enable him to distinguish between right and wrong, and understand the nature and consequences of his act, as applied to himself, he is a responsible agent, and amenable to the criminal law of the land for the consequences of his act."

In the case at bar the effort on behalf of the prisoner was to show that he did not measure up to the standard of mental capacity and criminal accountability established by this Court

in the decision from which we have just quoted. This was the point of the inquiry addressed to the alienist called for the accused, and the testimony of this expert furnished some support to the contention of the prisoner's counsel that he was irresponsible. The issue of insanity being thus distinctly presented, and the case not being wholly devoid of evidence tending to sustain the theory of the defense, it was the constitutional right of the prisoner to have the jury determine whether he was in fact and law criminally responsible for the heinous act for which he was being tried. The Court is given no authority to decide as to the effect or sufficiency of evidence submitted to the jury upon such an issue. *Dick* v. *State,* 107 Md. 11; *Jessup* v. *State,* 117 Md. 119. It is expressly denied the right to determine a question of that nature by the declaration of the Constitution that in the trial of all criminal cases the jury shall be the judges of law as well as of fact. *Const.* Art. XV., sec. 5. No instruction to the jury can be given by the Court in a criminal case except in a merely advisory form. *Beard* v. *State,* 71 Md. 279; *Esterline* v. *State,* 105 Md. 636; *Cochran* v. *State,* 119 Md. 552. It is clear that in the present case the Court could not have entertained a motion to withdraw the defense of insanity from the jury on the ground that it was not supported by legally sufficient evidence. If such a proposal had been made, it would doubtless have been rejected as being incompatible with the exclusive right of the jury to determine the issue of law and fact involved. Yet the action of the Court to which the exception was taken had virtually the effect of instructing the jury that the defense of insanity was not to be considered. This was the natural and inevitable interpretation to be placed upon the Court's interruption and objection when the prisoner's counsel was suggesting a verdict of "not guilty by reason of insanity," as a possible finding in the case, and the subsequent exclusion of that form of verdict from those to which the jury were confined by the Court's instruction. There is nothing in the record to qualify the

significance of this action or to enable us to say that it was not understood by the jury according to its apparent purpose as a direction that their verdict should leave out of consideration the defense of insanity.

In an ordinary criminal case we could have no hesitation in holding that a ruling which had the effect of withdrawing an issue from the jury, when there was evidence admitted in its support, constituted reversible error, and we cannot permit the sense of horror created by the foul and bloody deed, for which the prisoner in this case has been condemned, to prevent the application of the same principle of law and justice in the present instance. If we could find no evidence in the case which might possibly have influenced the minds of the jury in favor of the theory of irresponsibility upon which the defense relied, we might be at liberty to hold that no prejudice resulted to the prisoner from the action of which he complains. But such a conclusion upon this record, would be altogether unwarranted. There was in fact evidence offered, admitted and tending to show that the accused was not capable of fully appreciating the consequences of his act, and the presence of countervailing proof does not entitle us to hold that no injury resulted to the prisoner's case from the elimination of the insanity theory by the instruction under review. It is not for us to weigh the evidence with a view to forming an opinion as to what would have been the probable finding of the jury upon the issue of insanity if it had been left to their determination. It was the prisoner's right to have the jury exercise and express their own judgment upon that question. This right is secured to him by the fundamental law of the State, and when we find that it has been infringed on in the course of the trial below, it is our duty to correct the error and afford the prisoner an opportunity to have a jury decide the issue as to whether he was a sane and responsible malefactor, or a mental defective and degenerate without sufficient reason to control his degraded and vicious impulses. In performing this plain duty we are

simply recognizing, within just and legitimate limits, the right of an accused person, however depraved, to have the jury, before whom he elects to be tried, determine the validity of his defense according to the evidence.

An objection was raised by the State that the exception we have been discussing was not reserved in proper time. It was taken before the verdict was rendered and it was allowed by the Court, and, in a case of such gravity as the one at bar, the rule as to the time of reserving exceptions should not be so strictly applied as to prevent our consideration of the question thus presented.

The record contains another exception, which was taken to the admission in evidence of the prisoner's confession, the contention being that it does not appear to have been voluntary. This objection was properly overruled: The evidence shows clearly that the confession was not influenced by any promise, threat or inducement of any kind. Reference was made in the argument to the testimony of one of the officers that prior to the confession he asked the prisoner "why he didn't tell the truth," that "the truth would hurt no one," and of another officer who spoke to the prisoner of his accountability in the hereafter and said: "Why don't you tell it right, you are lying all through." Neither of these statements amounted to such an improper influence as to render the confession inadmissible. *McCleary* v. *State,* 122 Md. 394; *Rogers* v. *State,* 89 Md. 424; *Ross* v. *State,* 67 Md. 286.

A motion was made for an affirmance of the judgment because the appellant's brief was not printed prior to the time when the case was reached for argument, as provided by Rule 36 of this Court, but we are unable to grant the motion as we do not think the ends of justice would be served in a case like the present by a rigid enforcement of the rule.

On account of the action in reference to the defense on the ground of insanity, it will be necessary to reverse the judgment and award a new trial.

*Judgment reversed and new trial awarded.*

JUDGE BURKE dissenting: I agree with the principles of law stated in the opinion of the Court, but I cannot concur in the conclusion reached. A careful examination of the Record does not, in my opinion, justify the finding that the appellant was in the slightest degree injured by the action of the trial Court. The defense of insanity was not withdrawn from the consideration of the jury, and it is not shown that that defense was not fully presented and argued to the jury, as the counsel for the appellant had a perfect right to do under the form of the verdict given by the Court. Under that form the jury were at liberty to acquit the appellant upon the ground of insanity, if they found him to be insane at the time of the commission of the crime. Again, there are no facts to warrant the Court, in my judgment, in suspending Rule 36, and the judgment should be affirmed for the failure to comply with that rule.

Upon both grounds indicated the judgment, in my opinion, should be affirmed. I am authorized by JUDGE STOCKBRIDGE to say that he concurs in the views herein expressed.