WILLIAMS *v.* STATE

[No. 16, October Term, 1954.]

*Decided November 16, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Richard M. Pollitt*, with whom was *Vaughn E. Richardson*, on the brief, for appellant.

*Ambose T. Hartman*, Assistant Attorney General, with whom were *Edward D. E. Rollins*, Attorney General, and *Hamilton P. Fox, Jr.*, State's Attorney for Wicomico County, on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant was tried in the Circuit Court for Wicomico County on an indictment containing three counts, the first, charging breaking and entering a warehouse with intent to commit a felony therein—Code (1951) Art. 27, Sec. 38; the second, larceny to the value of $100.00 or upwards—Code (1954 Supp.) Art. 27, Sec. 405; and the third, receiving stolen goods. The jury found him guilty of the offense charged in count one, guilty of the offense charged in count two, and not guilty of the offense charged in count three. The court sentenced him to a term of fifteen years for larceny and a term of five years for breaking and entering, the sentences to run consecutively. The appellant contends that the court erred to his prejudice in two rulings on evidence and in imposing consecutive sentences.

There was testimony that a coal company in Salisbury had been broken into between closing time on Saturday and early opening time on Monday morning. A window and an inner door had been ripped open, as had the steel door of a large concrete vault, a large safe, and a wall

safe inside the vault. There was a hole some two inches in diameter punched through the wall of the vault. The edges around the door of the vault had been torn loose and punched and its metal moulding ripped off. On the Sunday the crime was committed, a member of the Salisbury Police Department observed a 1953 Buick Riviera automobile, with a gray body and maroon top, bearing Virginia license tags number 100660, parked some nine hundred feet from the office of the coal company. The police officer noticed an hour later that the car was in the same place. On the following Wednesday, the appellant drove the same automobile seventy miles an hour through Salisbury in an effort to escape the police, and finally was forced against the curb. Some $6,000.00 was found under the front seat of the car in bills of the same denominations as those which had been stolen from the coal company.

At the trial, the Chief of Police was permitted, over objection, to testify that on Wednesday, the day of the arrest, the appellant told him that the Buick automobile belonged to his wife, that he had the car in his possession all day the previous Sunday, but that he was not in Salisbury that day and the Buick which he was driving was not in Salisbury that day, as well as that the money found in the automobile was not his and he had no knowledge of it. On cross-examination, it was elicited that the appellant's statement had been reduced to writing and that the policeman's testimony was recited from the writing. It may well be that the writing should have been offered in evidence by the State, but since no objection was made on this score, the appellant cannot complain in this Court. *Gray v. State*, 181 Md. 439, 445; *Cooper v. State*, 205 Md. 162, 106 A. 2d 129; *Chisley v. State*, 202 Md. 87. The appellant concedes, as we think he must, since the automobile had been observed close to the scene of the crime on the Sunday of the crime, that so much of his statement as admitted that the automobile belonged to his wife and that it was in his possession on that Sunday, is an admission which was rele-

vant and proper evidence. In *Delnegro v. State,* 198 Md. 80, the Court said that an admission is an acknowledgment of some fact or circumstance which in itself is insufficient to authorize a conviction, but which tends to establish the ultimate fact of guilt. The appellant's objection is that the parts of the statement which said that he was not in Salisbury on Sunday and that the Buick was not in Salisbury on Sunday, and which denied the ownership or knowledge of the money found in the car, constituted neither an admission nor a confession but were simply hearsay statements which should not have been repeated to the jury. He argues that since the State had shown the presence of the Buick near the place of the crime on the day it was committed, his denial that he or the car were so present, impugned his credibility and tended to degrade his character in the eyes of the jury. It is difficult, if not impossible, to imagine how the statement to the jury by the police that the defendant had denied to them the commission of the crime and any connection with it, could be prejudicial to, or worsen, the accused's standing with the jury. Cf. *Wolf v. State,* 143 Md. 489. Furthermore, it is clear that all of a statement, a part of which constitutes a confession or an admission, is admissible in evidence, the exculpatory as well as the inculpatory. In *Walters v. State,* 156 Md. 240, it was held that the State should offer the whole of a confession, and not extracts, and that if the State offers but a part, the defense can require the production of the rest. In *Gray v. State, supra,* the Court, at page 445 of 181 Md., referred to the *Walters* case and said: "* * * this Court has said that it is the duty of the State to offer the entire confession and not a part of it." See also *Chisley v. State, supra. Wharton's Criminal Evidence,* Sec. 606 and 645, makes it plain that the whole of both confessions and admissions should be submitted to the jury. It is said in the latter section: "And as in the case of confessions, the whole of a statement containing an admission should be received in evidence." In *Word v. United States,* 199 F. 2d 625, C.C.A. 10,

*certiorari denied,* 345 U. S. 936, 97 L. Ed. 1363, the only evidence which the Government had to connect the appellant with the crime of unlawful interstate transportation of an automobile, was his admission to a Federal agent. He contended that when viewed in the light of the exculpatory explanation that he transported the car with the consent of the owner, there was a complete negation of unlawful intent. The Court said: "Undoubtedly, both the inculpatory and the exculpatory parts of the statement to the agent were admissible in evidence. * * * In the exercise of its province to weigh the evidence and assess the credibility of the witnesses, the jury chose to disbelieve the exculpatory part of the admission in the face of inconsistent testimony of the owner of the car." See also *State v. Marsh* (N. C.) 66 S. E. 2d 684, 687, and annotations in 2 *A. L. R.* 1017 and 26 *A. L. R.* 541. Under the authorities, the whole of appellant's statement to the police was admissible.

The appellant contends that the manager of a chain store should not have been permitted to testify that shortly before the crime, he bought three crowbars and several large screw drivers. We think the evidence was proper. The crowbars and large screw drivers were tools eminently suited for use in gaining entry to the coal company and its valut in the manner in which entry was gained. Where the connection of proffered evidence with the crime or the accused is in doubt, probability is the only requirement. In *Lingner v. State,* 199 Md. 503, Judge Collins for the Court, at page 507, said: "As to the argument that there is not sufficient connection between the appellant and the bags, probability is the only requirement. If there is any doubt, the decision is on the weight of the evidence, not on any question of admissibility." See also *King v. State,* 201 Md. 303; and *Berry v. State,* 202 Md. 62, 66.

The appellant's argument as to the illegality of the consecutive sentences is this: "The first count charged breaking and entering, a misdemeanor, and the second count grand larceny, a felony. Both charges arose out

of the same transaction. Appellant does not contend that he could not be convicted on both but only one punishment should have been imposed. Upon a conviction on both counts the lesser offense in the first count merges with the greater offense in the second count and there can be but one sentence. * * * Under this rule the Court could only impose judgment on the second count, grand larceny, and the additional sentence on the first count is invalid." In *Gilpin v. State,* 142 Md. 464, the Court adopted the following definition of merger: " 'The merger of one offense in another occurs when the same criminal acts constitutes both a felony and a misdemeanor. In such a case, at common law, the misdemeanor is merged in the felony, and the latter only is punishable. This doctrine applies only where the same criminal act constitutes both offenses, and where there is identity of time, place, and circumstances.' " Historically, there was justification for the doctrine of merger, which included the fact that the incidents of a trial for a felony were so different from those of a trial for a misdemeanor that it was unfair to permit the prosecution to interchange them. For example, one charged with a felony was not entitled to counsel, and there were other substantial differences. See *Wharton, Criminal Law,* Twelfth Edition, Vol. 1, Sec. 39. The procedural distinctions between felonies and misdemeanors have been largely, if not completely, abolished so that, as *Wharton* puts it: "* * * the doctrine of merger, above stated, has no reasonable basis on which to rest." The *Gilpin* case points out that in most jurisdictions the doctrine of merger has been confined to very narrow limits, and in England and in some of the States, it has been abolished by statute. It has been at least partly abolished in Maryland—Code (1951) Art. 27, Sec. 693. In *Klein v. State,* 151 Md. 484, 491, the Court, after speaking of the abolition of the doctrine of merger in statutory felonies, added: "* * * even if it still applies to common law felonies in this state, there would be no tendency by this Court to disregard any of the rules which govern

its application. It does not seem to be a doctrine which is much favored in the law * * *." Even in days when the doctrine of merger had more favor, vitality and effectiveness than it now has, the majority holding was that breaking and entering and larceny were not the same criminal act, constituted separate and distinct crimes, did not merge, and could be punished separately. *Bishop* on *Criminal Law,* 9th Ed., Vol. 1, Sec. 1062, says: "If in the night a man breaks and enters a dwelling-house to steal therein, and steals, he may be punished for two offences or one, at the election of the prosecuting power. An allegation simply of breaking, entering, and stealing states the burglary in a form which makes it single, and a conviction therefor will bar an indictment for the larceny or the burglary alone. But equally well a first count may set out a breaking and entering with intent to steal, and a second may allege the larceny as a separate thing, and thereon the defendant may be convicted and sentenced for both. * * * So, almost unanimously, are the authorities; and they do not differ in principle from what we have seen to be the majority doctrine in some other offences." Mr. Bishop's personal view is that such a procedure hardly accords with: "* * * the humane policy of our law * * *" and he points out that there are cases which have refused this "double punishment" on the ground that there is but one act which cannot be split into several distinct crimes. See also *Wharton's Criminal Law,* Twelfth Edition, Vol. 2, Sec. 1040, and 15 *Am. Jur.* pp. 63-65. Some jurisdictions which once adhered to Mr. Bishop's views as to the humane policy of the law, have later reversed themselves. One is Pennsylvania. In *Commonwealth v. Claudy* (Superior Ct. of Pa.) 102 A. 2d 227, the Court points out that the Supreme Court of Pennsylvania had reversed an early case of that State, holding that felonious entry and larceny, done at one and the same time would not be separately punished. It said: "There is no merit in the criticism of the consecutive sentences imposed on the charges of burglary and larceny on the

ground that they were committed in the 'same transaction'. In *Commonwealth ex ral. Moszczynski v. Ashe*, 343 Pa. 102, 21 A. 2d 920, 921, disapproving the dicta in *Commonwealth v. Birdsall*, 69 Pa. 482, 485, and *Stoops v. Commonwealth*, 7 Serg. & R. 491, and overruling our holding in *Commonwealth ex rel. Wendell v. Smith*, 123 Pa. Super. 113, 186 A. 810, it is said: 'The "same transaction" test is valid only when "transaction" means a *single act*. When the "transaction" consists of two or more criminal acts, the fact that the two acts are "successive" does not require the conclusion that they have merged. * * * The crime of wilfully and maliciously breaking and entering any building with intent to commit any felony therein is completed when the felon breaks into the building either actually, or constructively by fraud, conspiracy or threats, with the intent above named. Consummation or execution of the intent to steal or to commit some other felony is not necessary to complete the crime of burglary or the crime of "breaking and entering" etc. See 9 *Am. Jur.* p. 254, sec. 27. Whatever felony is committed *in* the building broken into is separate and distinct from the offense of breaking and entering into that building.' There can be no valid objection to cumulative sentences of this defendant for burglary and larceny committed in successive steps on the same occasion." In *Morgan v. Devine*, 237 U. S. 632, 59 L. Ed. 1153, the Supreme Court changed the Federal rule by holding that one who steals postage stamps and postal funds from a postoffice of the United States after having burglariously entered such postoffice with intent to commit a larceny therein, commits two distinct offenses, which may be separately charged and punished under the provisions of the U. S. Penal Code, one of which made it a criminal offense to steal any mail bag or other property of the Postoffice Department, and the other of which declared that whoever shall forcibly break into or attempt to break into any postoffice with intent to commit therein any larceny shall be punished as set forth. The Court, by its holding,

overruled decisions of the Appellate Courts of two Circuits. Mr. Justice Day, for the Court, at page 1155 of 59 L. Ed., said, in referring to the statute prohibiting entering and breaking into a postoffice: "It describes an offense distinct and apart from the larceny or embezzlement which is defined and made punishable under Sec. 190. If the forcible entry into the postoffice has been accomplished with the intent to commit the offenses as described, or any one of them, the crime is complete, although the intent to steal or commit depredation in the postoffice building may have been frustrated or abandoned without accomplishment. And so, under Sec. 190, if the property is in fact stolen, it is immaterial how the postoffice was entered, whether by force or as a matter of right, or whether the building was entered into at all. It being within the competency of Congress to say what shall be offenses against the law, we think the purpose was manifest in these sections to create two offenses. Notwithstanding there is a difference in the adjudicated cases upon this subject, we think the better doctrine recognizes that, although the transaction may be in a sense continuous, the offenses are separate, and each complete in itself."

The point is succinctly summed up by an article in 100 *Pennsylvania Law Review*, 411, "Statutory Burglary —The Magic of Four Walls and a Roof"—at page 437, where it is said: "* * * if the intent of the burglar is carried out, he may be convicted of both burglary and the other crime as well, the penalties to be served consecutively."

A correlative of the question of whether the crime of breaking and entering and the crime of larceny are merged if they occurred at the same time and place, is the fact that an acquittal of larceny or robbery does not preclude a second trial for burglary or breaking and entering, or vice versa, because the crimes, comprised of different elements, are not identical. The Court of Appeals of New York (Judge Cardozo concurring) in *People v. Snyder*, 148 N. E. 796, said: "The statute

makes criminal the act of breaking and entering a building with intent to commit a second crime. When that act is done, the crime of burglary is complete; if the intent to commit a second crime is effectuated by overt acts thereafter, a separate crime is committed, which the Legislature may declare should be separately punished." A New York statute so provided expressly. The Supreme Court of Illinois follows the same rule. See *People v. Niemoth*, 98 N. E. 2d 733. There the Court rejected the contention of the accused that his previous acquittal of burglary barred his conviction of robbery of the watchman of the same property involved in the burglary. The Court said: "The gravamen of the crime of burglary is the felonious intent with which the building of another is unlawfully entered. * * * The gist of the offense of robbery is the force or intimidation used in taking from the person of another, against his will, property belonging to him * * *. While both of these crimes may arise out of facts occurring in one transaction, the offenses are not the same because there is a distinct element in one which is not included in the other."

We think the Maryland law is that declared by the authorities we have cited. Sec. 38 of Art. 27 of the Code (1951) makes it a crime to break and enter a building in day or night with an intent to commit murder or felony therein, or with intent to steal, take, or carry away the personal goods of another of the value of $25.00 or more and prescribes punishment up to ten years. The crime is a misdemeanor. *Bowser v. State,* 136 Md. 342. Sec. 405 of Art. 27 of the Code (1954 Supp.) provides that every person convicted of common larceny to the value of One Hundred Dollars or upwards is guilty of a felony. The punishment set is not more than fifteen years in the penitentiary. The elements of the two statutory crimes are not the same. One could be complete, or occur, without the other. For example, entry to the coal company might have been made through an open door and the appellant, after walking through it, have

committed the larceny. Conversely, the appellant could have broken in, as he did, with the requisite intent to steal, and have been apprehended or scared off before he was able to effectuate the intent, in which case the crime of breaking and entering would have been complete.

The appellant relies on this language in *Berger v. State*, 179 Md. 410: "If a general verdict of guilty is rendered on an indictment containing two counts, both relating to the same transaction, the verdict is in effect a finding as to both counts, and the practice is to pass judgment on the count containing the more serious offense." The *Berger* case does not control the decision here. In it there was a general verdict of guilty as to two counts charging offenses which were characterized as "of the same general character" and which differed "only in degree". In the case at bar, the offenses charged in the first and second counts of the indictment differ in kind and are not of the same general character. The verdict of the jury was not a general verdict but there was a verdict as to each count.

In *Eyer v. Warden*, 197 Md. 690, Judge Delaplaine said for the Court: "Consecutive sentences, if certain and definite, are valid, where the accused is convicted of separate and distinct crimes charged in different indictments *or in different counts of the same indictment*." (Emphasis supplied) We have held that a count of breaking and entering and a count of larceny may be joined in the same indictment. *Debinski v. State*, 194 Md. 355; *Bowser v. State, supra*. The finding of the jury as to guilt on both the first and second counts was a finding that separate crimes had been committed. The trial court could, therefore, in its discretion impose separate punishments, within statutory limits.

*Judgment affirmed, with costs.*